v. Lisa Kizer and Farrell Gusevo. The district court made three separate but related errors in denying the Tribal Defendant's 12b1 motion to dismiss this case on sovereign immunity grounds. First, the Court held that the assertion of sovereign immunity did not raise any jurisdictional issue, and therefore, the 12b1 motion was the improper – was an improper vehicle for raising the sovereign immunity issue. The Court then compounded that error by sua sponte treating the 12b1 motion as if it were a 12b6 motion. Ginsburg. All right. Let's say that we agreed with you that this was properly – it's really not jurisdictional. It's quasi-jurisdictional, but there seems to be case law allowing it to be determined on a 12b1. Suppose that was all right. Then we get – but we could still affirm on the merits of the determination, right, with regard to the sovereign immunity? No, I – we certainly don't think so. Well, you don't think so, but what I mean is structurally we could. I mean, in other words, we would – an alternative basis for upholding the district court's ruling would be, well, he would – there actually was no sovereign immunity here. Well, under 12b1, we are – we are entitled to present evidence to support our jurisdictional – our claim that there is no jurisdiction here. I understand that. We did submit substantial evidence in support of that. All right. But under Maxwell, the standard seems – this was a lawsuit against individuals and their individual capacity for damages. And as I read Maxwell, there's no sovereign immunity, tribal sovereign immunity in that circumstance, with some narrow exceptions which don't seem to apply here. Well, Maxwell is an interesting case because it seems to fly in the face of – Well, whatever it flies in the face of, it's our case law. It deals with all the other case law. It's comprehensive and reconciles or attempts to reconcile all the other pieces. And it's binding on us. Well, let me give you two reasons why Maxwell doesn't control here. First, let me talk about the substantial factual differences. Maxwell, we have two paramedics employed by a tribal ambulance company who are providing services off the reservation, and the services they're providing are just simple medical services. They're attending to a gunshot victim. Services that have nothing to do with tribal government or tribal functions. That's very different than the case here, where we have on-reservation activities by high-level tribal officials and employees, the chief of police, the general manager. But in the end, they're still suing the individuals as individuals for damages coming out of their own pockets, not out of the tribe. And it's not a governance question. It's a, you know, on-the-ground question. No, I think it is a governance question, Your Honor. And so I submit to you that Maxwell is inconsistent with the cases like Hardin, cases like Merger. If that were true, we'd have to go on back. Is that what you're suggesting? No. No. What I'm suggesting to you is that Maxwell — If it's inconsistent, we have to go on back. What I'm suggesting to you is that Maxwell is — should be restricted to its particular facts. It was unused. But it doesn't read that way.  No. Your Honor, let me get to my second reason why we're here. I mean, they're suing individuals for damages. Yes. So at this stage, isn't that the end of it? No. As they — in Hardin v. White Mountain Apache, they were sued in their individual capacity. Merger, certain — sued in their individual capacity. Miller v. Wright, sued in their individual capacity. In every one of those cases, the individuals were found to be protected by tribal sovereign immunity. The reason Maxwell doesn't control here is that Maxwell itself says we are not establishing a rule that applies in all cases. They say that expressly. It says, while low-level tribal officials might not be — might not get the benefit of sovereign immunity, as in this case, and I'm quoting here, we cannot say this will always be the case. Counsel, in Miller, the defendants in that case were engaged in tax collection, which is an integral part of the tribal function. So I'm not sure that case helps you a lot. Oh, I think it helps us a great deal, Your Honor. Why? Tribal government gaming is not just a commercial activity. The casino that's involved here is tribally owned and operated. It's operated under Federal law. Every tribal casino in the country has to comply — has to comply with the Indian Gaming Regulatory Act of 1988, a Federal statute. And the actions that tribal officials were taking in this case, they were enforcing tribal law. They were enforcing the tribe's gaming ordinance, which was itself approved by the National Indian Gaming Commission. Well, part of the allegations are that they stole their money. So I don't care who it is. If it's the head of the tribe, I mean, are you saying — I mean, it has to be one within the scope of lawful authority, right? No. It has to be within the scope of their authority, not within the scope of law. Keep in mind, every assertion is — So if they — no matter what they did, if they kidnapped them and kept them for two weeks, if they stole all their money, you're saying they can do that because the tribe allows it? No, not — not exactly. What I'm saying is that under this Court's precedence, if tribal officials are acting in their official capacities, which these people were, if they're acting within the scope of their authority, which these people were under the tribal gaming ordinance, and they're enforcing tribal law, which they were, they're entitled to sovereignty. That is the rule that Maxwell rejected, right? No. Okay. I don't believe he did that. Let's suppose that we thought that. Then what happens next in the case? I mean, the other really fact-based question here is, were they operating under state law or tribal law for 1983 purposes? I would think that we don't reach that question, because it's not — for one thing, it's not a proper question before us on this non-final appeal. It's a strictly a question over the statute of whether it was a cause of action or wasn't a cause of action. Well, I think you do have the ability to reach that question here. Why? Because we've submitted there in the record, in the excerpts of record, there's substantial evidence submitted on behalf of these tribal defendants which documents and makes absolutely clear that they were acting under tribal law. How do we have jurisdiction over that question is what I'm asking you. Because that information is in front of you as part of this appeal. That's not a reason. I mean, we only have jurisdiction over the quasi-sovereign immunity issue, question under 12b-1. But if it's — but the question of whether there's been a cause of action stated under Section 1983 is not that kind of a question and not one which you could have an appeal at this stage in the case. Is that not true? Well, I guess I'll leave that to your determination. I would point out to you that the lower court cited Evans v. McKay as part of the basis for its decision that we're here on appeal. But you can't appeal a 12b-6. I'm sorry, Your Honor. Even if we termed it a 12b-6 issue, that's not appealable at this stage. A 12b-6 motion would not be appealable. This was only appealable because it was a 12b-1 assertion of sovereign immunity. Right. But this question, the question of whether they were operating under State or Federal law, is not a sovereign immunity question. It's a question — I'm asking you — I'm stating this because I want to give you the chance to respond, because it seems to me that the issue of whether — that's a question of whether they stated a cause of action under 1983, and it's not a sovereign immunity question, I think. But if you tell me otherwise, I will listen. I think they are inextricably intertwined. Why is that? They seem to depend on the case. The district court clearly thought they were. They — the district court cited Evans v. McCain, which is a 1983 case, to support its view that sovereign immunity didn't apply here. That doesn't make them right. And it seems to me that the — they depend on completely different factual considerations. Right? They have nothing to do with — the facts, the relevant facts are quite different. The issue — the 1983 question is were they operating under State or tribal law, which is a very fine-cut factual question. And it's not related, really, to the sovereign immunity question. I believe that they're intertwined. You may disagree, but — Would you like to tell me why? I think they're intertwined because — because sovereign immunity would apply equally to a 1983 claim as to any other type of claim if — if we've proven the prerequisites for the assertion of sovereign immunity. True. They apply — it would apply no matter what the claim. It would apply, but not because they were operating under State rather than tribal law. I mean, you could have a statute that allows you to sue for people operating under tribal law, but you just don't happen to have one. They won't — they have to be operating under State law. Well, I believe there's ample evidence in the record for this Court to conclude that these — that these tribal officials were, in fact, acting under — under tribal — exclusively under tribal law. And I'd ask you this. There's nothing — let me submit this. There's nothing in the record here that suggests that they were operating under any State law. No State law, no county ordinance has been submitted to the Court to suggest that they were operating under anything other than enforcement of the tribal gaming ordinance. That's the only law that was in — that was in effect here, and that's what these — that's what these defendants have stated in their declarations. They were enforcing the tribal gaming ordinance. If there were a judgment entered against the defendants, would the tribe pay that judgment? Yes. And also, you — That's at their discretion, right? Well, the judge asked the question. The answer is yes. I mean, they're viewed as — I'm the tribe's attorney. I'm here representing the tribe's interests as well as the — as well as the interests of the defendants. You said there were — if the Court had proceeded with this case as a 12B1 case, there was additional evidence you would have presented. What would that evidence have been? We submitted five declarations. No, I'm saying you said you would have submitted evidence. So the evidence that you submitted, was there any additional evidence that you would have submitted if given the opportunity to do so? No, Your Honor. We submitted the evidence. It was ignored by the district court. Okay. So the evidence that you submitted — Yeah. Everything is — everything we would submit is before you in the excerpt of record. Okay. If you'd like to reserve some time. Yes. Can I make — can I just make one other point? Go right ahead. And I think I still wind up with a couple minutes. Let me talk about Evans v. McKay, because it's an important case, and we — we talk about it quite a bit in the — in the — in our briefs. The judge cites it as a 12B6 — it was a 12B6 case. And in that case, because the complaint alleged that the tribal officials had been acting under color of State law, the — the court was bound to accept those allegations as true at the motion-to-dismiss stage, a 12B6 motion. But then, if you go — if you look at what happens in that case in — as it goes through the process, the case gets remanded back to the district court, comes back up to the second — to the Ninth Circuit three years later in 1992, and we've got a completely different method of analysis. The court isn't bound by the face of the complaint. The court isn't looking at just the allegations of the complaint. And the court sets forth what I think is a very simple rule that applies in — that should be applied in this case. And — and the court basically said, if the evidence demonstrates that the tribal officials were acting in their capacity as tribal officials and were acting to enforce tribal law, then they were not acting under color of State law, and they are immune from a 1983 claim. And I think that's exactly the case. In the posture of the first Evans case, not the second, right? Well, it shouldn't have been, though. If the court had considered the evidence, as it should have under 12b1, it could have made that determination. Except that it's not a 12b1 issue. That's why Evans developed the way it did. Well, I think that issue is — And that is not a 12b1 issue. Not the — and there are two issues here, and that is not a 12b1 issue, is it? I think it could have been determined on a 12b1 motion under — What matter – Now ‒ now I — I'm sorry. Thank you very much. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court. Robert Nersessian, and with me is Thea Senkiewicz of Nersessian & Senkiewicz for the plaintiffs and Respondents. Your Honor — or Judge Becklo, thank you. I think you hit what we were dealing with here. This is Maxwell reconciling the history of this tortured sovereign immunity that was – that has been going back all the way to Evans with respect to subordinate persons within a tribe. Specifically, it dealt with Hardin. It dealt with Evans. And it dealt with Avi Cassino. That's the body that provides where you might find a conflict. And it reconciles that conflict. And that reconciliation provides that if you show, citing the Evans, joint action with state officials in a 1983 violation, the employees – and this is separate and apart from all of this other stuff – the employees who act in concert and conspiracy with the state actors that are providing the state action, would themselves not have sovereign immunity that is pledged? But was Evans a sovereign immunity case or was it about the reach of 1983? That is a wonderful question, and I would say it is both, because it is obvious that sovereign immunity would apply to an – And as far as I can tell, it's totally about 1983. Well, it seems to be, except that nobody makes – it has regularly been accepted that sovereign immunity would be a defense to a 1983 claim, and within the body of that case, the 1983 claim, which was appropriately pled and before the Court, together with at least a – the showing of the sovereign resulted in a finding of, no, you don't get dismissed. So it is both. I don't think the word sovereign immunity are in Evans. Okay. Except that you can't get past the denial of the motion to dismiss in Evans without addressing the sovereign immunity issue. But if the Court – if nobody raises it and the Court doesn't address it, how can we read it into the case? That is exactly my argument in the defendant's cited authority with respect to Paulson and why it would apply, and I understand that, Judge Rollinson. And, yes, you're right. If it is not in there and was not necessary to the decision, the Court should not look at it as precedential. But that doesn't take us away from the fact that they also reconfirmed Maxwell from a sovereign immunity standpoint. The decision in Evans and thusly projecting onto Evans by this circuit, even if it wasn't there in Evans, the sovereign immunity analysis saying you don't get sovereign immunity and a 1983 question is a dual question. One of which is if you show 1983 liability of an individual actor with State action outside of the tribe, outside of the sovereign, then there won't be governmental immunity or sovereign immunity. Isn't the reason why State action matters in 1983 is because the statute says so? Does nothing to do with sovereign immunity? It has to be – excuse me, Justice Sotomayor. Your Honor, you may well – I'm sorry, I was not talking over you. I understand that wrong. That should sense that you have to be acting under color of State laws. That's why we matter – we care whether they were acting under color of State law, because otherwise you don't have a cause of action. Your Honor, thank you for pointing that out. As I've been preparing for this argument, one can't escape the language in Evans that says that this shall – this shan't be dismissed, okay? But I can't also – I don't have any way to say, other than to cite Evans and Maxwell's confirmation of the propriety of Evans, that this is a – that 1983 creates some special exception. What I do know, though, is that 1983 was violated here. Is that issue before us? I don't believe it has to be, except that there was – Or can it be? Do we have jurisdiction now on this – what's essentially a collateral order appeal because of the quasi-sovereign immunity aspects of this case over the question of whether this is – these were State actors or Tribal actors? I think from the record that's before you, construing the complaint in the light most favorable to the plaintiffs, that it would be appropriate to decide whether or not State action is alleged. Ordinarily, do you get to appeal the – does it – does any – could they have appealed the denial of a 12p6 motion for failure to state a claim because somebody is not a State actor? Let's say you have a private person in a 1983 case, and the judge says he's not a State actor and dismisses, yes, then we have appeal – an appeal. But that's not what happened here, right? You're right. You're right. I – maybe I'm just being a little too gracious and encompassing, because it seems to me that if the complaint is before you, which includes the undisputed – you have evidence before you as well by the first set of affidavits, but the complaint under Schwarzenegger is still to be taken as true unless it is expressly contradicted by the affidavits, and then in that case you have a dispute. I see, Judge, if a complaint alleges something on a summary judgment motion or a failure to state a claim motion, and the converse says – or then affidavits are submitted, and those affidavits do not address a given allegation in the complaint under Schwarzenegger and a number of other cases, those allegations in the complaint are to be construed as true. We don't – it doesn't have to be reavered by the respondent. It has to be contradicted by the movant, and if it is not contradicted by the movant, then those – those statements are given not only deference, they are to be assumed to be true in the – in the appeal. The narrow issue here, just whether, as a matter of law, that they are – that they have sovereign immunity, something that I would think under 12b1 that, at least here on the allegations of your complaint, can't be decided at this stage. So, therefore, I think I would assume that we should send it back. Well, I would – Even if the trial judge was wrong in terms of saying, well, the way he analyzed it. I was going to point this out, is even if you accept the arguments that the appellants have made, the remedy in this instance is to send it back for further proceedings, and even under the defendant's posture with Evans being resubmitted later, that is the right process. Additionally, here, I don't know if the Court has had an opportunity to see the supplemental authorities, but there is a quasi-published order that has the Court below going forward, and everything we're talking about has been shown to have been true, that there were unlawful acts taken against the plaintiffs, that summary judgment – judgment has entered against the people who were alleged to have been acting in concert with the tribal defendants. Judgment. That's a rare thing, to see a court enter a summary judgment against police officers, especially en masse, and that's what has happened here at this point. And with all of that being said, certainly it would be premature having – it would be premature to just outright say there is sovereign immunity here. A couple other things I would like to point out. I'm gratified that – or I'm happy to hear that Mr. – I'm sorry. I spaced my – Mr. Feldman's representation, that the tribe would pay the judgment. We've never asked them to. And I would also point out – But that doesn't make a difference, does it? Yes, it does, because – I'm sorry, Your Honor, that's me doing it again. You're anticipating my question. Yes, I am. Does that make a difference in terms of whether or not sovereign immunity applies if the tribe will be satisfying the judgment? The answer to that, I would suggest, is no. But there is something very similar that would address sovereign immunity, which would be – Tell me why your answer is no to my question regarding whether or not it makes a difference that the – if the tribe is responsible for the damage. Okay. See, that was two different questions, Your Honor. The first one is if the tribe is going to be paying the judgment. The second one is if the tribe is responsible for the judgment. They're two different questions. Yes.  Well, thank you, tribe. I think you're being insane. You have people who work for you, who have gone out there and committed theft, who have committed false imprisonment, who have stolen money from the people who come to your businesses to give you business. And now you, as a body politic, are going to sit there and say, you know what? This was fine. Even with the summary judgment below, we still have, by that representation, Mr. Feldman saying, this was fine on behalf of his clients. It wasn't fine. Okay. So the next question is whether or not the tribe is responsible to pay. We're not saying they were. But under the law. I believe that there is plenty of case law that says when an employee acts patently outside the scope of employment, respondeat superior will not apply. And especially in the nature of a 1983 claim, we see the case law that is expansive throughout the entire area of the law, that the municipality, unless they have established a policy or practice that has placed these actions outside the discretion of the police officers, and they're acting only in accord with that policy and practice, the sovereign in a 1983 action, which is the State, albeit the State subdivision, is not liable. There is no claim against them. And in most 1983 cases against individuals, there is indemnity by the governmental entity. It's been documented all over the place. And the are case law, nonetheless, is that that's just simply irrelevant, whether there's State indemnity or not. And you're absolutely right, Judge Brezan. And I personally, I believe that that is a correct decision as a relevancy as an irrelevancy. And I would even take it a step further, that perhaps this should be written up more along the perspectives of, for goodness sakes, do you people realize or recognize, speaking to the police authorities, that to get a judgment on 1983 past qualified immunity means that no reasonable police officer could have done what your police officer did, and you're going to stand there and say, you know what, we're going to indemnify somebody who is so ignorant that they committed an intentional tort that no other person in blue that we ever hired would do. They should be hanging these people out to dry. The whole idea that people are not going to become police officers because of the behalf of these municipalities, we hire smart people. We trust them, considering the spectrum of what constitutes qualified immunity, to know when they are violating clearly established principles of the Constitution. And therefore, we will not be indemnifying, we have no duty to indemnify, and you take those actions at your own risk. And you know what? Yeah, maybe the line will move back a little bit. The issue is whether the likelihood of indemnity has anything to do with the sovereign immunity question, and the answer is generally no. The likelihood of indemnity is generally yes. No. No? Well, if you want it to be yes. Okay. No. No, I'm saying that from my personal experience. Right. And as far as the other side of it is, I suppose there's a lot of plaintiffs who win judgments who are glad that there isn't indemnification. Oh, I just said I'm ecstatic that Mr. Feldman said that they will be paying. I'm also truly a little bit surprised. I thank you very much for your time and would ask if there's any further questions. No. Thank you. Thank you. Would you have a minute in rebuttal? Let me just say a couple of things. Actually, you have 1 minute and 55 seconds. Thank you. In our brief, we cite a case called Little v. City of Seattle. I would ask the Court to take a look at that case. I think it sheds some light on this situation. It's not a tribal sovereign immunity case. It's a Federal sovereign immunity case. A Federal investigator was investigating some folks for something. I'm not sure exactly what it was. They claimed that the investigation was poorly handled and that their rights were violated, statutory rights, constitutional rights, all kinds of rights were violated. In that case, Ninth Circuit case, the Court said the real question here is was this investigation within the officer's duties. And they said not only was it within his duties, it was his duty. It was his duty. His duty was to investigate. And therefore, the fact that he may have done it poorly makes no difference. If it was within the scope of his authority, he is entitled to sovereign immunity. Case dismissed. Was that a damages case or an injunction case? Damages or what? Was that a damages case or an injunctive case? Damages, I believe. At what stage was that decided? I don't know, Your Honor. I don't know. Let me make one other point about Maxwell. Again, I need to emphasize this. Maxwell clearly says they are not stating a rule. That panel was not stating a rule that would apply in all cases. They said it applied to what they were calling low-ranking tribal officers. And they said we cannot say that the rule we're announcing here today will always be the case. They said in every case in which tribal officials are sued individually, we have to we need to be sensitive to the impact that that suit will have on tribal governmental activities and tribal governmental functions. And I submit to you that that's what we have here. It's very different than paramedics, you know, helping a gunshot victim off the reservation. Isn't that why there needs to be more of a factual development here, to find out exactly what they were doing and under what circumstances? I mean, what we do know, at least by the complaint, is that they took these people into custody, that they found they weren't breaking any law. They eventually did release them, kept their money. Apparently, state officials were involved in the arrest. Now, how that would be within, or if it was, within the scope of their authorized actions, don't we need to know what more about what they knew and how they were acting and why they were doing it? Well, Your Honor, again, I think that all that is intertwined. You've got in front of you in the excerpts of records the declarations which sets forth all that information, and it's available to you and would have been available to the district court had the court reviewed it. But all those are declarations. They haven't been examined, cross-examined, or anything else. Just they're statements. Statements which are adequate under this Court's precedence to demonstrate that they were acting within the scope of their authority, that they were acting in their official capacities, and that they were enforcing tribal law. And if that is the case, then they are entitled to sovereign immunity. Thank you. Thank you very much. Thank you both for your argument. The case of Pistor v. Garcia is submitted, and we are adjourned.
judges: Bucklo, Berzon, Rawlinson